# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

KEVIN BOTELHO,                          )
                                        )
            Plaintiff,                  )      **Civil Action No.**
                                        )      **15-11916-FDS**
    v.                                  )
                                        )
NORDIC FISHERIES, INC.,                 )
                                        )
            Defendant.                  )
_____)


## MEMORANDUM AND ORDER ON MOTION OF
## DEFENDANT NORDIC FISHERIES, INC. FOR SUMMARY JUDGMENT
## <u>AND MOTIONS TO STRIKE</u>

**SAYLOR, J.**

This action arises out of an injury suffered by a seaman aboard a fishing vessel. Plaintiff Kevin Botelho was working on the F/V AMBITION owned by defendant Nordic Fisheries, Inc., when he injured his head. He alleges, among other things, that he was injured due to defendant's negligence in failing to provide a non-skid deck surface. The complaint asserts claims for negligence, unseaworthiness, maintenance and cure, and intentional and/or negligent failure to provide maintenance and cure. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1333.

Defendant has moved for summary judgment on Counts 1 and 2 and to strike certain portions of plaintiff's expert's initial report. The parties have also filed various motions to strike other parts of the record, as set forth below.

For the reasons given below, the motions to strike and defendant's motion for summary judgment will be denied.

## I.     Background

Unless otherwise noted, the following facts are undisputed.

### A.     Factual Background

In June 2014, Kevin Botelho was working for Nordic Fisheries, Inc. as a seaman and deckhand aboard the F/V AMBITION on a commercial scallop-fishing trip.  (Def. SMF ¶¶ 1-2).

When fishing for scallops, the AMBITION drags two dredges, one on the starboard side and one on the port side, along the sea floor.  Every hour, the dredges are winched up and their contents (which includes scallops, bycatch, rocks, and other debris) are dumped on the aft deck in what is known as "the pile."  (Pl. SMF ¶¶ 4-7).  The dredges are then lowered back to the seafloor, and the crew uses the next hour to pick the scallops out of the pile, deposit them in the shucking house, and return the rocks and bycatch to the sea.  (Pl. SMF ¶¶ 4-7).

Although the vessel has a non-skid surface on some of the deck, there is an area of the stern deck where the dredges and chain bags are regularly landed that does not.  According to defendants, that is due to the heavy abuse that part of the deck takes, which would cause the coating to wear off in a matter of days.  (Def. Reply in Supp. Summ. J. at 6 n.2 (citing DiNapoli Rpt.); Barry Rpt. at 20 (noting that the deck of the shucking house has a non-skid surface)).

On June 15, 2014, while working on board the AMBITION, Botelho slipped and fell.  (Def. SMF ¶ 4; Pl. SMF at 1).  When he slipped, he was on his way from the door of the shucking house to the pile, about three feet from the port rail, between amidships and the stern.  (Def. SMF ¶¶ 6-7).  Botelho contends that the deck where he slipped is bare steel.  (*See* Pl. SMF ¶ 10).[1]

At the time of the accident, Richard Chidsey was on deck working as a fisheries observer

---

[1] Defendant disputes that plaintiff knows exactly where he slipped.  (Def. Reply in Supp. Summ. J. at 6).

for the National Oceanic and Atmospheric Association.  (Def. SMF ¶ 11; Pl. SMF at 3).  Captain Christopher Audette was also on deck, picking the pile approximately six to eight feet away from Botelho.  (Pl. SMF ¶ 17).  It appears that Chidsey is the only witness to have seen any part of the fall.  He also saw a skate (a flat fish) on the deck near where Botelho fell.  (Pl. SMF at 3-4).[2] The evidence as to what, exactly, Chidsey saw and what Botelho slipped on is disputed and discussed in more detail below.

At some point after his fall, Botelho alleges that he hit his head in the hold on a low light, fixture, or pipe.  (Def. SMF ¶ 18; Pl. SMF at 7).  He alleges that after his fall, he felt groggy and dizzy, and that he felt "very edgy" and "in a fog" for the remainder of the trip.  (Pl. SMF ¶¶ 20-22).

The AMBITION landed its catch in New Bedford about a week after Botelho's fall.  (Pl. SMF ¶ 24).  Botelho went to an urgent-care clinic, which transferred him to a hospital, where he was admitted and observed for several days.  (Pl. SMF ¶ 25).  He had suffered a mild traumatic brain injury.  (Pl. SMF ¶ 45).  He alleges that he continues to suffer from the consequences, and as of January 17, 2017, his doctor considered him to be totally disabled.  (Pl. SMF Ex. E).

## B.    Procedural Background

Botelho filed the complaint in this action on May 26, 2015.  The complaint alleges (1) negligence under the Jones Act, 46 U.S.C. § 30104 *et seq.*; (2) unseaworthiness under general maritime law; (3) maintenance and cure under general maritime law in the amount of $200,000, together with costs and interest; and (4) intentional and/or negligent failure to provide maintenance and cure under general maritime law.  (Compl. ¶¶ 15-29).

On June 23, 2017, defendant moved for summary judgment on Counts 1 (negligence) and

---

[2] A skate is a flat cartilaginous fish in the ray family.  It is frequently caught as a bycatch when fishing for scallops.  (Def. SMF ¶ 14).

2 (unseaworthiness), together with a supporting memorandum and a statement of material facts. Plaintiff filed his response to the statement of material facts on July 26, and his opposition to defendant's motion for summary judgment on July 27.[3] Defendant filed a reply on August 2.

In addition to the motion for summary judgment, there are five pending motions to strike various parts of the summary-judgment filings.

On July 18, defendant filed a motion to strike the "Purported Rebuttal Expert Report of Plaintiff's Expert, Mr. Christopher D. Barry, P.E.," attached as Exhibit D to plaintiff's statement of material facts.

On July 26, plaintiff filed a motion to strike the declaration of Richard Chidsey, attached as Exhibit O to defendant's statement of material facts.

On August 2, defendant filed a motion to strike the declaration of Kevin Botelho and plaintiff's second supplemental answers to interrogatories, which were attached as Exhibits B and K, respectively, to plaintiff's statement of material facts.

On August 10, plaintiff filed another motion to strike the strike the declaration of Richard Chidsey, attached as Exhibit O to defendant's statement of material facts. The July 26 motion questioned the document's authenticity, whereas the August 10 motion contends that defendant's counsel deliberately concealed the fact that they had obtained Chidsey's declaration until after the close of fact discovery.

Also on August 10, plaintiff filed a motion to strike defendant's reply in support of its motion for summary judgment.

## II.    Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

---

[3] The opposition was filed one day late.

to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation mark omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and footnotes omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III. <u>Analysis</u>

Defendant contends that it is entitled to summary judgment on Counts 1 and 2 on the ground that it is undisputed that plaintiff slipped not on the deck but on a skate, and therefore he is unable to prove that the condition of the deck surface caused his injury.

Plaintiff, for his part, disputes that he slipped on the skate. He further argues that regardless of whether his foot was on the deck or the skate, there is still a genuine issue of material fact as to whether the condition of the deck caused his injury, because there is evidence that the slipperiness of the deck caused the skate to slide on the deck.

## A.    Motions to Strike

Because the disposition of the motions to strike may affect the evidentiary record, the Court will address them first.

### 1.    Background of Motions to Strike

On August 24, 2015, defendant served its Rule 26(a)(1) initial disclosures.  Those disclosures identified "Rick Chidsey[,] Fisheries Observer[,] 22 Gay St.[,] Newton, MA" as a potential witness.  (Pl. Opp'n to Mot. to Strike Rebuttal Rpt. Ex. A ("Anderson Decl.") ¶ 1; *Id.* Ex. B).  It also listed a telephone number of "(315) 484-8048."  (*Id.* Ex. B).

On September 1, 2015, plaintiff served interrogatories on defendant.  Interrogatory No. 10 requested that defendant "[i]dentify all . . . recorded conversations, and/or statements . . . and all memoranda of statements, made by any person at any time, relating to . . .the alleged incident . . . ."  (*Id.* Ex. C at 4).  Interrogatory No. 15 requested that defendant "identify each person who was a witness to the events immediately preceding, during, and/or immediately after the alleged incident."  (*Id.* Ex. C at 5).

Also on September 1, plaintiff served requests for the production of documents on defendant.  Request No. 4 sought the production of "[a]ll recorded communications, transcriptions of recorded communications[,] written reports, statements, and memoranda of statements, which were written by, provided by or taken from, any witnesses to the alleged incident or by any persons having knowledge of the alleged incident."  (*Id.* Ex. D at 3).  Requests 34, 35, and 36 requested documents "reviewed," "relied upon," and/or "evincing facts relied upon" by "any expert witness the Defendant intends to call at trial."  (*Id.* Ex. D at 6).

On March 28, 2016—several months late, and after plaintiff had filed a motion to compel responses—defendant served its interrogatory answers and responses to document requests. (Def. Mot. to Strike Rebuttal Rpt. Ex. 2; Pl. Opp'n to Mot. to Strike Rebuttal Rpt. Ex. E).

Defendant identified "Richard Chidsey[,] 22 Gay Street[,] Newton, MA 02460[,] 315-484-8048" as a witness in response to Interrogatory No. 15. (Def. Mot. to Strike Rebuttal Rpt. Ex. 2 at 8-9). In response to Request for Production No. 4, defendant acknowledged that it had obtained statements from four other witnesses and objected to providing those statements, but said nothing about Chidsey. (Pl. Opp'n to Mot. to Strike Rebuttal Rpt. Ex. E at 2). In answer to plaintiff's request for documents relied on by defendant's expert, defendant responded by "agree[ing] to supplement this Response pursuant to Federal Rules of Civil Procedure 26." (*Id.* Ex. E at 8-9).

On June 18, 2016, Robert Murphy, counsel for defendant, traveled to Chidsey's home and obtained a recorded statement from him about the accident. (Def. Reply in Supp. Summ. J. Ex. D ¶¶ 4, 6). Chidsey, however, at that point lived in Marshfield, Massachusetts, not in Newton. (*Id.* ¶ 4).

On November 21, 2016, fact discovery closed. (ECF 46).

On March 24, 2017, plaintiff served the defendant with his initial expert report. (Anderson Decl. ¶ 10; Pl. SMF Ex. H).

On April 27, 2017, defendant served plaintiff with copies of its two expert reports. (Anderson Decl. ¶ 12). Simon Bellemare's report stated that he relied in part on "Testimony of . . . R. Chidsey." (Def. SMF Ex. W at 5). Captain Richard DiNapoli's report stated that he relied in part on a "statement of National Marine Fisheries Observer Richard Chidsey, (assigned to Vessel for voyage at issue) recorded by counsel for Defendant, undated." (Pl. Opp'n to Mot. to Strike Rebuttal Rpt. Ex. F at 2). Neither report, as produced to plaintiff, included a copy of Chidsey's testimony.

On May 23, 2017, plaintiff's counsel noticed the depositions of Bellemare and DiNapoli for May 31 and June 1, 2017, respectively. (Pl. Opp'n to Mot. to Strike Rebuttal Rpt. Ex. H).

Plaintiff requested that the experts bring all the documents that they relied on to their depositions. (*Id.*). On May 27, 2017, defendant's counsel indicated that they would need to reschedule the depositions. Plaintiff's counsel tried to reschedule the depositions, but was informed by defendant's counsel that the experts would not be available until July, after the June 30, 2017 deadline for expert depositions. (Anderson Decl. ¶¶ 15-18; ECF 58).

On June 23, 2017, defendant moved for summary judgment. That motion relied substantially on the Chidsey declaration to establish the "undisputed fact" that plaintiff slipped on a skate.

On June 28, 2017, the parties agreed on new deposition dates for Bellemare and DiNapoli of July 12 and July 13, 2017, respectively. (Anderson Decl. ¶ 23).

On June 29, 2017, defendant served plaintiff with copies of the materials relied on by its experts, including an audio file containing the recorded statement of Chidsey that attorney Murphy had obtained in June 2016. (*Id.* ¶¶ 24-25).

On July 7, 2017, defendant supplemented its discovery responses. Those responses continued to identify Chidsey's address as 22 Gay Street, Newton, notwithstanding the fact that Murphy had visited him at his home in Marshfield. (Pl. Opp'n to Mot. to Strike Rebuttal Rpt. Ex. S at 2).

On July 11, 2017, plaintiff served defendant with a rebuttal expert report. (Anderson Decl. ¶ 35; Def. Mot. to Strike Rebuttal Rpt. at 3). The rebuttal report contains the following opinions that were absent from the initial report: (1) if plaintiff stepped on the skate, the cause of his fall was the lack of non-skid surface on the deck; (2) in that case, the skate would have slipped across the surface of the work deck; and (3) a non-skid coating applied to the deck would have prevented his fall. (Def. Mot. to Strike Rebuttal Rpt. Ex. 1 at 4). During a subsequent

telephone conversation on that day, defendant's counsel informed plaintiff's counsel that Bellemare would not appear for his deposition. He also provided counsel with the correct home and email addresses for Chidsey. (Anderson Decl. ¶ 36).

On July 12, 2017, Bellemare failed to attend his deposition. (*Id.* ¶ 38). No party requested to move the deadline for expert discovery. It appears that Bellemare still has not been deposed.

### 2. Analysis

#### a. Plaintiff's Motions to Strike the Declaration of Richard Chidsey and Defendant's Motion to Strike Barry's Rebuttal Expert Report

Plaintiff's first motion to strike the Chidsey declaration, filed July 26, 2017, is brief. It contends that the document, signed on June 22, 2017, cannot be authentic because, while defendant's counsel stated they had received the document by email on June 23, 2017, the document properties of the image file indicated that it was created on June 13, 2017. Defendant's opposition attacks plaintiff counsel's expertise in reading metadata, requests a full evidentiary hearing on the matter, and includes a declaration from defendant's counsel asserting that he had received the declaration by email on June 23 from Chidsey and that subsequent communication with Chidsey indicated the declaration was genuine. The Court is satisfied that the declaration is authentic and the first motion to strike will accordingly be denied.

Plaintiff's second motion to strike the Chidsey declaration, filed fifteen days later on August 10, 2017, is more substantial. It alleges that defendant's counsel violated its obligation under Rule 26(e) to supplement or correct its discovery responses as to Chidsey's statement, and that defendant should be precluded from relying on it pursuant to Rule 37(c).

Defendant's motion to strike plaintiff's expert rebuttal report is related, and contends that the rebuttal is untimely and a belated attempt to create a genuine issue of material fact to survive

summary judgment. Plaintiff responds that its rebuttal report is timely, considering defendant's concealment of its reliance on Chidsey's declaration, and that this was the first reasonable opportunity for its expert to incorporate that information.

A brief review of the relevant discovery obligations is warranted. As part of its initial disclosures, a party is required to provide to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "[T]he required sanction in the ordinary case is mandatory preclusion." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (alteration in original) (internal quotation marks omitted) (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)). But "preclusion is not a strictly mechanical exercise; district courts have some discretion in deciding whether or not to impose that onerous sanction." *Santiago-Díaz v. Laboratorio Clínicio y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006). In determining the proper sanction, the court should consider

"(1) the party's justification for the late disclosure; (2) the opposing party's ability to overcome any prejudice; (3) the impact on the court docket; (4) the party's history of litigation abuse; and (5) the party's need for the late evidence." *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State Street Bank & Trust Co.*, 290 F.R.D. 11, 17 (D. Mass. 2013) (citing *Harriman v. Hancock Cty.*, 627 F.3d 22, 30 (1st Cir. 2010)); *see also Gagnon v. Teledyne Princeton, Inc.* 437 F.3d 188, 191 (1st Cir. 2006).

Defendant here clearly failed to update its discovery responses in a timely manner as required by Rule 26(e). As to its Rule 26(a)(1) initial disclosures, defendant was obligated to notify plaintiff of Chidsey's correct address within a reasonable time after discovering that the Newton address was incorrect, which was at least as early as June 18, 2016. A correct address was not provided until July 11, 2017, more than a year later. As to Interrogatory 10 and Request for Production 4, defendant was required to notify plaintiff within a reasonable time after June 18, 2016, that it had obtained a witness statement from Chidsey—even if it objected to providing, and was not required to provide, that statement. Plaintiff did not discover that defendant had obtained a witness statement from Chidsey until April 27, 2017, when it received expert reports indicating reliance on that statement.[4] As to Requests for Production 34, 35, and 36, defendant had an obligation to provide the materials its experts relied on, including Chidsey's statement, within a reasonable time after April 27, 2017, when it completed its expert reports. Plaintiff did not receive those materials until June 29, 2017.

Defendant thus failed to provide discovery as required by the rules. As noted, under Rule

---

[4] Defendant argues that it was not obligated under Rule 26(a)(3) to identify witnesses it expected to present at trial until the time for pretrial discovery, and therefore did not fail to make a timely identification of its expert's reliance on Chidsey. But defendant was obligated to identify witness statements in response to plaintiff's discovery requests, and the fact that it would have been independently obligated to identify Chidsey does not, at least under these circumstances, affect that obligation.

37(c), defendant is not allowed to use Chidsey's statement in support of a motion or at trial unless the Court finds that the failure "was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).

Defendant contends that its failure to provide an updated address for Chidsey was harmless because (1) he was identified as a witness and (2) his correct telephone number was provided.  Under the circumstances, the Court agrees.  The fact that Chidsey was a witness was made clear from the outset.  Plaintiff's counsel could have easily used the telephone number to contact Chidsey; presumably, that is how defense counsel arranged the meeting in Marshfield.  And there is no evidence that plaintiff's counsel ever attempted to use the Newton address to contact him or serve a deposition subpoena, or that plaintiff was otherwise prejudiced by the failure to provide an up-to-date address.

Defendant's failure to provide a copy of Chidsey's statement in fact discovery (in order to update its responses to Interrogatory 10 and Request for Production 4) is also harmless under the circumstances.  Defendant would certainly have objected to providing a copy of Chidsey's statement pursuant to the attorney work-product doctrine (as, indeed, it objected to providing the witness statements it had already obtained at the time it first responded to plaintiff's discovery requests).  (Pl. Opp'n to Mot. to Strike Rebuttal Rpt. Ex. E at 2); *see Upjohn Co. v. United States*, 449 U.S. 383, 399-402 (1981); *Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947).  At most, therefore, plaintiff was deprived of the knowledge that defendant had obtained a statement from Chidsey.  But because defendant had already identified him as a witness and provided at least one valid means to contact him, plaintiff could simply have conducted his own witness interview.

Once defendant's experts had relied on Chidsey's statement, however, a different set of

obligations came into play. Expert reports must contain "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(ii). In this context, that required a full, or reasonably full, description of the relevant portions of Chidsey's statements. Furthermore, defendant had agreed to supplement its document response to produce documents relied upon by its experts.

By failing to provide plaintiff with Chidsey's statement when it served its expert reports, defendant prevented plaintiff's expert from rebutting defendant's expert opinions until after defendant filed a motion for summary judgment based on those opinions. *See Poulis-Minott*, 388 F.3d at 358 ("The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." (quoting *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (internal quotation marks omitted))). Furthermore, defendant's motion for summary judgment relied heavily on information in Chidsey's statement and on plaintiff's expert's (allegedly inadequate) consideration of the evidence.

Defendant does not appear to contend that its failure to comply with its expert discovery obligations was substantially justified, but does contend that it is harmless. Defendant contends that plaintiff should have known that its position was that he slipped on a skate and that therefore plaintiff's expert should have addressed that possibility in his initial report. It points to the following discovery responses that it contends should have alerted plaintiff to its position: (1) plaintiff's recorded statement—obtained on July 7, 2014, by a marine surveyor hired by the defendant to investigate his personal injury claim—in which plaintiff stated that he slipped on a skate (Def. SMF Ex. L);[5] (2) defendant's answer to Interrogatory 3, stating that it was "informed

_____

[5] That statement appears to have been provided to plaintiff early in the discovery process. When asked, "What happened to you?," plaintiff responded, "Actually, it was a nice sunny day, flat, calm and picking the pile, I

13

that [plaintiff] reported that he slipped on a skate while working on deck"; (3) defendant's answer to Interrogatory 8, stating that "with regard to the plaintiff slipping on a skate and striking his head in the fish hold . . . [t]he plaintiff informed the vessel's Captain of the alleged incidents"; (4) defendant's answer to Interrogatory 9, stating that the defendant was "informed the plaintiff informed the Captain that he slipped on a skate while working on deck"; (5) defendant's answer to Interrogatory 13, stating that the defendant was "informed the plaintiff alleges he slipped on a skate while working on deck"; and (6) defendant's answers to Interrogatories 18 and 24, stating the same (Def. Mot. to Strike Rebuttal Rpt. Ex. 2).

Defendant is no doubt correct that those statements should have put plaintiff on notice that it intended to argue that he slipped on a fish, based on plaintiff's own statements. But the question is not whether plaintiff, or plaintiff's expert, might have anticipated that argument and addressed it earlier; it is whether defendant's failure to comply with its expert discovery obligations was harmless.

Defendant's failure to comply was not, in fact, entirely harmless, because plaintiff was forced to litigate the issue of whether his rebuttal expert report should be struck. But that harm is relatively minor, and easily redressed without a severe evidentiary sanction. The delay in producing the statement was only two months (April 27 to June 29). Any prejudice to plaintiff arising from defendant's late disclosure can be remedied simply by (1) allowing the rebuttal expert report to stand and (2) allowing plaintiff to rely on that rebuttal report to oppose defendant's summary judgment motion.[6] In determining what sanction is appropriate, the Court

---

dumped one basket and came out and slipped on a little skate." (Def. SMF Ex. L ¶ 6). When asked, "And you're pretty sure that it was just a skate that you slipped on?," plaintiff responded, "Yeah." (*Id.* ¶ 7).

[6] The expert report is a true rebuttal report, containing "evidence . . . intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see Equal Emp't Opportunity Comm'n v. Tex. Roadhouse, Inc.*, 215 F. Supp. 3d 140, 159 (D. Mass.

also notes that Chidsey's testimony appears to be central to the case; there is no extended history of litigation abuse; and the effect on the Court's docket (apart from this flurry of motions to strike) is small. Furthermore, plaintiff himself was not diligent, and failed to make any effort to interview Chidsey or take his deposition. Plaintiff likewise appears to have ignored defendant's repeated indications that it intended to argue that he slipped on a skate.

For those reasons, there is no reason to bar the evidence entirely and preclude defendant from using Chidsey's testimony. Conversely, there is no reason to strike the rebuttal expert report. That resolution will effectively place the parties in the position they would have been in had defendant disclosed Chidsey's statement at the time it served its expert report. Moreover, that outcome will neither reward defendant for failing to provide the statement with its expert report, nor reward plaintiff for his own lack of diligence.

The only remaining issue is whether plaintiff should be entitled to an award of attorney's fees and expenses in connection with preparation of the rebuttal report and the litigation of this issue. Such an award may well be appropriate, at least to some degree, and therefore the Court will give plaintiff a period of 21 days in which to seek such a sanction.

In summary, plaintiff's motions to strike the Chidsey declaration, and defendant's motion to strike Barry's rebuttal report, will be denied.

### b.    Defendant's Motion to Strike the Plaintiff's Affidavit and Second Supplemental Answers to Interrogatories

Defendant has further moved to strike (1) plaintiff's affidavit, filed with his response to defendant's statement of material facts, and (2) certain supplemental answers to defendant's interrogatories.

---

2016); *see also Glass Dimensions*, 290 F.R.D. at 16 ("A rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.").

Defendant contends that plaintiff's affidavit is inconsistent with his prior deposition testimony and that the declaration should be excluded because plaintiff cannot create a genuine issue of material fact by contradicting his prior sworn testimony.

Plaintiff's affidavit, executed on July 26, 2017, states in part as follows:

> I have a specific memory of slipping. I remember the slip being very quick and feeling my legs slide out from under me. I don't remember the specifics [sic] details of what one or the other of my boots were doing. . . . At the time I slipped, I was on the bare steel part of the work deck, approximately 3 feet from the port rail, and just forward of the port pile. . . . I have no memory of seeing my fishing boot stepping onto the deck immediately before I slipped. I have no memory of seeing the condition of the deck at the exact spot where my boot stepped immediately before I slipped. I have no memory of stepping on a skate fish or any of the other things that the dredges dump onto the deck. I do have a very basic memory of walking toward the forward end of the port pile before I slipped, and that memory does not include seeing anything that was remarkable, that stood out, or that was out of the ordinary.

(Pl. SMF Ex. B ¶¶ 5-8).

Plaintiff's deposition, taken on February 12, 2016, contains the following exchanges:

> Q. Is it fair to say that you slipped on a skate?
> A. I don't know that.
> Q. Did you ever tell anybody that you slipped on a skate?
> A. I don't know that either.
> Q. Do you think you slipped on a skate?
> A. I don't know that either.
> Q. As you sit here today, can you say that you didn't slip on a skate?
> A. Don't know that.

(Pl. Opp'n to Mot. to Strike Botelho Decl. Ex. A at 139).

> Q. And then you slipped on deck?
> A. Yes.
> Q. Do you have a memory of slipping or you just—
> A. No.
> Q. No specific memory of slipping?
> A. No. I slipped on deck. No.
> Q. No, you don't have a memory?
> A. I have a memory but, um—I don't get the question.
> Q. Do you remember—
> A. Slipping on deck, yes.

Q.  You do remember that?
A.  Yes.
Q.  Do you know what caused you to slip?
A.  Probably the surface.
Q.  Of the deck?
A.  Yes.

(*Id.* at 148-49).

A party normally cannot create a genuine issue of material fact by contracting his own prior sworn testimony.  *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation as to why the testimony is changed."). Here, plaintiff's testimony and his declaration are largely consistent, although the declaration contains some additional detail and plaintiff appears to have been briefly confused by the question at his deposition as to whether he had a "specific memory of slipping," and thus gave an initial response that was potentially inconsistent with the declaration. [7]  But plaintiff's deposition and testimony are consistent on the key point, which is that he does not remember whether he slipped on a skate.  Moreover, any differences are immaterial because, for reasons set forth below, plaintiff's declaration will not affect the summary judgment decision.

Defendant also complains about certain statements in plaintiff's second supplemental interrogatories—namely, that "the work deck of the F/[V] AMBITION at the location the Plaintiff slipped was unreasonably slippery and not fit for the purpose which it was intended and used (i.e. to walk on)," and that "the F/V AMBITION was unseaworthy due the negligent failure of the Defendant to equip the deck with an effective nonskid surface such as nonskid paint or

---

[7] Plaintiff's statement that he slipped "on deck" is not necessarily a statement that his foot was on the surface of the deck when he slipped.  The phrase "on deck" can be understood simply to mean that plaintiff was on the deck, as opposed to in the hold or at some other location on the vessel.

deck tiles."  (Def. Mot. to Strike Botelho Decl. at 2).  Those statements appear to be legal

conclusions, which do not in themselves create a genuine issue of material fact, and will be

ignored for purposes of summary judgment.

Defendant's motion to strike plaintiff's affidavit and his supplemental interrogatory

answers will therefore be denied.[8]

### c.    Plaintiff's Motion to Strike Defendant's Summary Judgment Reply

Plaintiff contends that defendant's summary judgment reply memorandum is improper

because it is the first time that defendant (1) argues that the Coast Guard's Naval and Vessel

Inspection Circular No. 5-86, *Voluntary Standards for U.S. Uninspected Commercial Fishing*

*Vessels* ("NVIC 5-86"), is not relevant because it is a voluntary guideline and because there is no

evidence that the portion of the deck plaintiff slipped on lacked non-skid coating; (2) relies on

Capt. DiNapoli's report; and (3) argues that Chidsey's June 22, 2017 affidavit is consistent with

the recorded statement obtained by defendant's counsel.

As to the first point, plaintiff is correct that defendant's reply is the first time it challenges

whether the area of the deck where plaintiff slipped had a non-skid surface.  But defendant does

not argue that there is no genuine issue of fact as to where plaintiff slipped; rather, it argues that

that fact is immaterial to its summary judgment theory:  "[E]ven if the Plaintiff could prove that

NVIC 5-85 provided the standard and the Vessel's deck did not contain a non-skid application in

the area where the Plaintiff allegedly slipped, which is denied, Plaintiff cannot prove that such a

---

[8] Defendant's motion is entitled "Motion to Strike Plaintiff's . . . Second Supplemental Answers to Interrogatories" and provided those statements from the second supplemental answers as "examples" of inconsistent statements.  To the extent that defendant is moving to strike plaintiff's second supplemental interrogatory responses in their entirety, it has not provided a reasoned argument as to any other aspect of the answers beyond the two statements it identifies.  The text of that motion also requests the Court to also strike plaintiff's *first* supplemental interrogatory responses, but does not identify any allegedly offending portions of that filing.  *See* Fed. R. Civ. P. 7(b)(1) ("The motion must . . . state with particularity the grounds for seeking the order.").

condition was a cause in fact and legal cause of his injury." (Def. Reply in Supp. Summ. J. at 6 (footnote omitted)). Thus, the Court can assume for the purposes of summary judgment that the area plaintiff slipped was bare steel. Plaintiff has not, for the purposes of the summary judgment motion, been blindsided by an argument that he must rebut to prevail.

The other reply arguments plaintiff complains of appear to be appropriate rebuttals of arguments made in plaintiff's opposition to summary judgement and to plaintiff's motion to strike Chidsey's declaration. To the extent that the facts relied on by Capt. DiNapoli are in dispute, the Court will take that into account in considering his opinions. Plaintiff's motion to strike the reply memorandum will therefore be denied.

### d.      Defendant's Request, in Its Motion for Summary Judgment, to Strike Barry's Initial Expert Report

Contained within defendant's motion for summary judgment is a motion to strike the initial expert report of plaintiff's expert Barry. The stated grounds for striking the report are that "(1) he does not even opine that the lack of a non-skid caused Plaintiff's alleged injuries; and (2) his opinion considers facts not in evidence, and fails to address the uncontroverted fact that the Plaintiff slipped on a skate fish, rather than on the deck itself." (Def. Mot. for Summ. J. at 1-2). Specifically, defendant protests that Barry's opinion is based on "an assumption that the Plaintiff slipped when he came into direct contact with the deck," which it contends is not borne out by the evidence. (Def. Mem. in Supp. Summ. J at 11).

As to being based on facts not in evidence, as discussed below, whether plaintiff slipped on the deck or a skate appears to be a genuine issue of material fact. While defendant's other objections to Barry's report may be arguments in favor of granting summary judgment for defendants, they do not appear to be reasons to strike the entire report, which the Court will consider for its content.

### B.    Motion for Summary Judgment

In order to prove defendant's negligence under Count 1, plaintiff must establish duty, breach, causation, and injury.  *Ferrara v. A. & V. Fishing, Inc.¸* 99 F.3d 449, 453 (1st Cir. 1996); *see also Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 813 (2001).  "A plaintiff's burden of proving causation under the Jones Act is 'featherweight.'  Liability exists if the employer's negligence contributed even in the slightest to the plaintiff's injury." *Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 10 (1st Cir. 1993).

To prove the unseaworthiness of the F/V AMBITION under Court 2, plaintiff must show that the shipowner breached its "absolute duty to provide to every member of his crew 'a vessel and appurtenances reasonably fit for their intended use,'" *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir. 1980) (quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)); *see also Poulis-Minott*, 388 F.3d at 366, and that "the unseaworthy condition was the sole or proximate cause of the injury sustained," *Ferrara¸* 99 F.3d at 453.  "[L]iability under the doctrine of unseaworthiness is not dependent upon theories of negligence"; "unseaworthiness is a *condition*, and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it."  *Id.* at 452-53 (quoting *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498 (1971)) (internal quotation mark omitted).

Defendant argues that it is entitled to summary judgment because plaintiff cannot carry his burden to show that the lack of a non-skid surface on the deck caused his injury.  Defendant's motion focuses heavily on the "undisputed fact" that plaintiff slipped on a skate and not the deck (which, of course, plaintiff disputes).

Even if a jury were to find that plaintiff slipped on a skate, there is record evidence from

which a reasonable jury could conclude that his fall was caused by the condition of the deck. Specifically, plaintiff's expert opined that even if plaintiff had stepped on the skate, the skate would have slid across the surface of the deck and a non-skid coating on the deck would have secured the skate and prevented his fall. (Def. Mot. to Strike Rebuttal Rpt. Ex. 1 at 4). As discussed above, the Court will allow that rebuttal report to stand. The motion for summary judgment will accordingly be denied.

Furthermore, there appears to be a genuine question of material fact as to what caused plaintiff to slip. There is testimony from marine surveyor Neil Stoddard, Captain Audette, and controller Mark Buron (who was not on the vessel at the time) that plaintiff told them that he slipped on a skate. (Def. SMF ¶¶ 9, 15-17 & Exs. L, P, Q).[9] Plaintiff himself appears to have no memory, although he testified at his deposition that he "probably" slipped on the deck. (Pl. Opp'n to Mot. to Strike Botelho Decl. Ex. A at 149). And Chidsey's declaration states that "the area where [plaintiff] slipped[] was in [his] peripheral vision"; that he "saw his body move in a slip and fall type motion down toward the deck"; that as he was "moving toward him, [he] saw a skate laying on the deck near [plaintiff]"; that he "immediately assumed and believed that [plaintiff] slipped on a skate, but this was not something [he] actually saw with [his] eyes"; that after plaintiff slipped, when the other crewmembers asked what happened, Chidsey "told them

---

[9] Captain Audette seems to have testified that plaintiff told him he slipped on a skate right after the accident:

> A. Like I said, when he got back up, we were all: You all right? What happened?
> Q. Okay, and did he say anything, what caused him to slip?
> A. He slipped on a skate.
> Q. Did he say that?
> A. Yes, he did.
> Q. Did he say he saw the skate?
> A. I don't recall that.
> Q. Okay. He just said he slipped on a skate?
> A. Slipped on a skate.

(Def. SMF Ex. P). Plaintiff disputes that he said anything to Captain Audette immediately after the accident, arguing that it was Chidsey who told everyone plaintiff slipped on a skate.

that [plaintiff] slipped on a skate"; but that "[b]efore [plaintiff] slipped, [Chidsey] was not looking at [plaintiff's] feet," "did not see his boots," and did not "see him step onto a skate or anything else before he slipped." (Pl. SMF Ex. A). In short, there is substantial evidence that plaintiff either slipped on the deck or a skate, and the issue cannot be resolved on summary judgment.[10]

Finally, plaintiff contends that he has alternate theories of liability, namely, that defendant is responsible for plaintiff's hitting his head in the hold because the light fixtures and pipes on the ceiling of the hold are too low, and also that defendant was negligent in failing to relieve him from work and provide him with prompt medical attention when it became clear that he was not well. (Pl. Opp'n to Summ. J. at 5; Pl. SMF ¶¶ 41-43). Defendant did not address these theories in its motion for summary judgment or its reply to plaintiff's opposition. In any event, summary judgment as to Counts 1 and 2 will be denied.

## IV.  Conclusion

For the foregoing reasons:

Plaintiff's motions to strike the declaration of Richard Chidsey are DENIED.

Defendant's motion to strike the rebuttal expert report of Christopher Barry is DENIED.

Defendant's motion to strike the declaration of Kevin Botelho and certain supplemental responses to interrogatories is DENIED.

Plaintiff's motion to strike the arguments and evidence submitted for the first time by

---

[10] Defendant points out that plaintiff's expert did not expressly opine that a non-skid coating would have prevented his fall, so that even if a jury were to find that plaintiff slipped on the deck, causation would be lacking. Plaintiff's expert opined (1) that the NVIC 5-86, a set of voluntary safety standards published by the U.S. Coast Guard, recommend that fishing vessels like the F/V AMBITION equip their decks with non-skid surfaces, and (2) that friction testing in the area where plaintiff fell revealed values below the level that an effective non-skid coating would provide. That appears to be enough evidence for a reasonable jury to conclude that the deck was unreasonably slippery; the Court need not decide at this time whether this is enough for a reasonable jury to conclude that the quantum of non-slipperiness gained from an effective non-skid coating per the NVIC 5-86 would have prevented the fall.

defendant in its summary judgment reply brief is DENIED.

Defendant's motion for summary judgment on Counts 1 and 2 and its motion to strike the initial report of Christopher Barry are DENIED.

Plaintiff may file a motion for reasonable attorneys' fees and expenses consistent with this memorandum on or before November 2, 2017.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor, IV
United States District Judge

October 12, 2017