**Jonathan Gilzean**

| | |
|---|---|
| **From:** | Carolyn Latti |
| **Sent:** | Monday, January 23, 2017 5:33 PM |
| **To:** | Bob Murphy |
| **Cc:** | David Anderson |
| **Subject:** | Botelho v. Nordic Fisheries, Inc. |
| **Attachments:** | 2017-01-23 to Bob with Designations.pdf |

**EXHIBIT**

**5**

Plaintiff

Dear Bob:

Please attached letter.

I know we have all been busy but Mr. Barry will be unavailable from February 14th to March 3rd, 2017. Please let me know when we can go on the vessel to do the inspection with Mr. Barry and his report can be done.

Thank you.

Very truly yours,

Carolyn

Carolyn M. Latti
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
617-523-1000
617-523-7394-facsimile
clatti@lattianderson.com
www.lattianderson.com

# LATTI & ANDERSON LLP

*Counsellors At Law and Proctors In Admiralty*

30-31 Union Wharf, Boston, Massachusetts 02109   (617) 523-1000
Gloucester, MA   (978) 281-0605
Portland, ME   (207) 874-6464
Facsimile   (617) 523-7394
www.lattianderson.com

DAVID E ANDERSON**
CAROLYN M. LATTI*
JONATHAN E. GILZEAN

OF COUNSEL

MICHAEL B. LATTI

WITH OFFICES AT
46 Union Street, New Bedford, MA 02740, (508) 999-1029
* ALSO ADMITTED IN ME
** ALSO ADMITTED IN NH & ME

January 23, 2017

VIA EMAIL & FIRST CLASS MAIL
Mr. Robert Murphy, Esquire
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA 02110-3927

Re:   Botelho V. Nordic Fisheries, Inc.

Dear Bob,

Enclosed please find Plaintiff's Designation of Experts and Treating Physicians and Dr.Panis' Report.

Mr. Barry's report will be provided once an inspection occurs.

On January 18, 2017, Dana Hewins and Dr. William Burke's report were provided.

Any questions, please let me know.

Thank you.

Very Truly Yours
LATTI & ANDERSON LLP

Carolyn M. Latti

Encl.

UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

KEVIN BOTELHO
    Plaintiff                           )
                                        )
                                        )
                                        )            Civil Action
V.                                      )
                                        )            No. 15-cv-11916-FDS
NORDIC FISHERIES, INC.                  )
    Defendant                           )
                                        )
                                        )

## PLAINTIFF'S DESIGNATION OF EXPERTS AND TREATING PHYSICIANS

Now comes the Plaintiff in the above-entitled matter and by and through his attorneys submits Plaintiff's Designation of Experts and Treating Physicians:

1.      **Dr. Matthew Messina**
        **Dr. John C. Dorn**
        **Dr. Bruce Abbott**
        **Dr. Cheryl Hoffman**
        **Dr. Colin McDonald**
        **Dr. Cecilia Gafitanu**
        **Dr. Eric Levine**
        **St. Luke's Hospital**
        **Treating physicians and practitioners listed in records**
        **101 Page Street**
        **New Bedford, MA 02740**

Dr. Messina, Dr. Dorn, Dr. Abbott, Dr. Hoffman, Dr. McDonald, Dr. Gafitanu and Dr. Levine were the Plaintiff's treating physicians at St. Luke's Hospital. The additional Doctor(s) listed in the Plaintiff's medical records participated in the care and treatment when the Plaintiff was at St. Luke's Hospital, hereinafter "the Doctor(s)".

The above treating Doctor(s) are expected to testify as to the medical history taken, their examinations, findings, diagnosis, treatment, testing, prognosis and casual relation between the

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the fore-
going document was served on the attorney
of record for each party named in this action,
by mail postage prepaid on

Plaintiff's fall of June 15, 2014 and the conditions for which they treated the Plaintiff for. Specifically, they will testify as to the complete course of treatment that the Plaintiff underwent while at St. Luke's Hospital, specifically but not limited to the Plaintiff's hospitalization both in June 2014 and September 2014.

The Doctor(s) will testify as to the daily treatment, medical procedures and tests, Plaintiff's progress from day to day, to his problems, sensations and symptoms and complaints from the Plaintiff. Further, the Doctor(s) will testify as to the Plaintiff's condition and progress upon entering the hospital up to and including his final discharge from the hospital.

The Doctor(s) are expected to testify and opine as to their examinations, testings, findings, diagnoses, prognoses, treatment, need for future treatment, medications of the Plaintiff and the causal relation between the accident and injury of June 15, 2014 and the conditions for which they treated the Plaintiff for. They are further expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations. They are expected to testify generally in accordance with all of the facts and opinions set forth in their medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

The Doctor(s) will testify that the Plaintiff suffered an injury on a fishing vessel. The Doctor(s) will testify that initially on June 23, 2014, the Plaintiff went to Hawthorne Medical Associates Urgent Care clinic where after evaluation, there was concern for intracranial injury, neck injury and/or vertebral dissection and as a result, the Plaintiff was transported to St. Luke's Hospital by ambulance.

The Doctor(s) will testify that Plaintiff presented on June 23, 2014 with a history of a fall on fishing boat about a week prior and that he slipped and fell and hit his head on deck. The Doctor(s) will testify as to the Plaintiff's prior medical history and treatment.

The Doctor(s) will testify as the various complaints and symptoms that the Plaintiff presented with. The Doctor(s) will testify that Plaintiff presented with symptoms unsteadiness of gait, difficulty walking, vertigo when moves head, unsteady gait,  increased symptoms when looking right to left, dizziness, sense of spinning when he turns his head, light headedness, nausea, difficultly focusing, at times blurred vision, tinnitus, irritable, light and sound sensitivity, difficulty with memory and immediate attention, decreased appetite, nausea, uncoordinated at times and lower extremity weakness, neck stiffness to significant vertigo. The Doctor(s) will testify that the symptoms and conditions presented with are causally related to the Plaintiff's fall and injury of June 15, 2014.

The Doctor(s) will testify that the admitting and discharge diagnosis of the Plaintiff was cerebral and vestibular concussion, very substantial post- concussion syndrome status post fall, vestibular disequilibrium and cognitive difficulties with a referral for vestibular rehabilitations and physical therapy.  The Doctor(s) will testify that the admitting and discharge diagnosis are causally related to the Plaintiff's fall and injury of June 15, 2014.

The Doctor(s) will also testify to the course of treatment that the Plaintiff had in the hospital for the second time in September 2014.  The Doctor(s) will testify as to the symptoms that Plaintiff presented with of being foggy and out of it; off balance; numbness in facial area, right foot, right great toe and right arm; expressive aphasia and some slurred speech; felt like head was going to explode  to difficultly walking.  The Doctor(s) will testify that Plaintiff was diagnosed with occipital neuralgia with traumatic vestibulopathy, post-concussion syndrome with cerebral concussion and vestibular concussion and right sided numbness with no neurovascular issues.  The Doctor(s) will testify that the admitting and discharge diagnosis in September 2014 are causally related to the Plaintiff's fall and injury of June 15, 2014.

The Doctor(s) will testify as to the various cat scans, x rays, MRI's and testing that were performed. The Doctor(s) will testify as the various medical consults that Plaintiff had while at the hospital. The Doctor(s) will also, describe and explain the purpose of the medications that were proscribed during the course of their treatment of him and that was causally related to the Plaintiff's fall and injury of June 15, 2014

The Doctor(s) will testify that all treatment, testing, diagnostic procedures, diagnosis of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's fall and injury of June 15, 2014.

The Doctor(s) opinions will be based on their education, training and experience, as well as on their examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, which are in the possession of the Defendant.

Curriculum vitas will be provided.

The Doctor(s) testimony will be consistent with their hospital notes and records which were previously forwarded

2.     **Hawthorne Medical Associates**
       **Dr. David Clark**
       **Dr. Matthew Messina**
       **Dr. Chad Beattie**
       **Karen Caddell, np**
       **Karen Rocha, pt**
       **John Leboeuf, pt**
       **Kathy Joy, pt**
       **Treating physicians and practitioners listed in records**
       **237A State Road**
       **North Dartmouth, MA 02747**

Dr. Clark, Dr. Messina and Dr. Beattie have been the Plaintiff's treating physicians, along with the other Doctor(s) and practitioners identified in the medical records, hereinafter referred to as "the Doctor(s).

4

The Doctor(s) are  expected to testify and opine as to their examinations, testings, findings, diagnoses, prognoses, treatment, Plaintiff's symptoms and conditions, Plaintiff's physical and occupational therapy, need for future treatment,  medications of the Plaintiff and the causal relation between the Plaintiff's fall and injury  of June 15, 2014 and the conditions for which they treated the Plaintiff for.  The Doctor(s) are further expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations.  The Doctor(s) will testify as to the Plaintiff's pre-accident and injury medical history.  It is expected that he will testify in accordance with all of the facts and opinions set forth in all of their medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

With respect to the manner in which the Plaintiff's injury occurred, the Doctor(s) are expected to testify that Mr. Botelho presented several weeks after a fall on a fishing boat.  The Doctor(s) are expected to testify as to the treatment and tests that the Plaintiff underwent at St. Luke's and his prior medical history and treatment since his injury to present.

The Doctor(s) will testify as the symptoms that Plaintiff presented throughout his treatment including but not limited to neck pain, lightheadedness, headaches, nausea, dizziness, disequilibrium, facial numbness, ataxia, sensitivity to sound and light, ear and head pressure, ringing in the ears,  parenthesis across the face to difficulty walking.  The Doctor(s) will testify as to the Plaintiff's symptoms presented over the course of treatment of him are causally related to incident and injuries of June 15, 2014.

The Doctor(s) will testify that they would monitor the Plaintiff's overall health and his treatment over the years.  The Doctor(s) will testify that Plaintiff was diagnosed with a concussion, post-concussion syndrome, vertigo, right traumatic vestibulopathy, ataxia to dizziness.  The Doctor(s) will testify as to the referrals they made to Doctor(s) for the Plaintiff

for treatment of his post-concussion syndrome and symptoms.   The Doctor(s) will testify that they referred the Plaintiff for physical/occupational therapy within its office to work on his balance, dizziness, gait, neck pain, light headedness to his unsteadiness. They will testify as to Plaintiff's course of treatment for physical/occupation therapy.  The Doctor(s) will testify as to the Plaintiff's diagnosis and referrals were causally related to incident and injuries of June 15, 2014.

The Doctor(s) will also testify regarding Plaintiff's various hospitalizations and Emergency room visits.  The Doctor(s) will testify as to the various testings, procedures and MRI"s and Cat scans that the Plaintiff has undergone. They will also testify as to the various medications that they prescribed for the Plaintiff.

The Doctor(s) will opine that the Plaintiff's diagnosis and conditions are permanent and how it is causally related to incident and injuries of June 15, 2014.  The Doctor(s) will testify regarding future treatment and care of the Plaintiff and how it is causally related to incident and injuries of June 15, 2014.

The Doctor(s) will testify as to the Plaintiff's limitations and its effects on the Plaintiff's ability to work and how it is causally related to incident and injuries of June 15, 2014.

The Doctor(s) will testify that all treatment, procedures, operations, testing, diagnostic procedures, diagnosis, rehabilitation and physical therapy of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's injury of June 15, 2014.

The Doctor(s) opinions will be based on their education, training and experience, as well as on their examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, all as set forth in the Plaintiff's medical records, which are in the possession of the Defendant.

Curriculum vitas will be provided.

3.   **Massachusetts Eye and Ear Infirmary**
     **Dr. Gregory Whitman & other treating physicians and practitioners listed in**
     **records**
     **250 Pond Street**
     **Braintree, MA 02184**

Dr. Whitman was Plaintiff's treating physician.  Dr. Whitman is a board certified neurologist who specializes in otology, neurotology, oteoneurology and vestibular and balance disorders.

Dr. Whitman is  expected to testify and opine as to his examinations, testings, findings, diagnoses, prognoses, treatment, need for future treatment,  medications of the Plaintiff and the causal relation between the Plaintiff's fall and injury  of June 15, 2014 and the conditions for which the treated the Plaintiff for.  He is further expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations. Dr. Whitman is expected to testify generally in accordance with all of the facts and opinions set forth in all of his medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

With respect to the manner in which the Plaintiff's injury occurred, Dr. Whitman is expected to testify that the Plaintiff was working on a fishing vessel when he fell and experienced a concussion.  Dr. Whitman will testify to and describe the Plaintiff's various physical complaints, as documented in their medical records.  He will further explain his examinations of the Plaintiff, what symptoms he presented at each office visit and his recommended course of treatment.  Dr. Whitman will offer testimony as the results of the various diagnostic testings and will explain the findings of all their testings and procedures.

Dr. Whitman is expected to testify as to prior treatment of Mr. Botelho and whether the conditions the effect, if any on his current conditions.

It is expected that Dr. Whitman will testify that the Plaintiff presented to him with a concussion that he sustained while working on a fishing vessel.   Dr. Whitman will testify that Plaintiff presented with positional vertigo with head turns, right ear pressure, tinnitus, decreased hearing on the right, right sided facial numbness, persistent dizziness to disequilibrium. Dr. Whitman is expected to testify as to the various testing, including vestibular testing performed on the Plaintiff and explain the testifying and the findings of the testing.

Prior to testing, Dr. Whitman will testify that the Plaintiff's symptom were suggestive of left posterior canal benign paroxysmal positional vertigo.   Upon testing and examination, Dr. Whitman will testify that the Plaintiff had a mild traumatic brain injury along with old and uncompensated or decompensated right peripheral vestibular hypofunction; abnormal vestibular testing and diagnosed the Plaintiff with a right labyrinth or eighth nerve abnormality.  Dr. Whitman will testify that Plaintiff had abnormal basic electronystagmogram, normal VVI, VOR-gain below normal limits, positional vertigo and eustachian ear dysfunction; right  worse then left.  Dr. Whitman will testify how treatment, symptoms and diagnosis was causally related to the Plaintiff's fall and injury of June 15, 2014.

Dr. Whtiman will offer testimony as to the permanency of the Plaintiff's vestibular condition and that it is causally related to Plaintiff's fall and injury on June 15, 2014.

Dr. Whitman will testify that all symptoms, treatment, procedures, operations, testing, diagnostic procedures, rehabilitation of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's fall and injury of June 15, 2014.

Dr. Whitman will testify as to the Plaintiff's limitations and its effects on the Plaintiff's ability to work and how it is causally related to incident and injuries of June 15, 2014.

Dr. Whitman's opinions will be based on his education, training and experience, as well

8

as on their examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, all as set forth in the Plaintiff's medical records, which are in the possession of the Defendant.

Curriculum vitae will be provided.

4.      **Dr. Walter Panis & other treating physicians and practitioners listed in records**
        **MGH Physical Medicine & Rehabilitation**
        **5 Longfellow Place, Suite 201**
        **Boston, MA 02114**

Dr.  Panis is Plaintiff treating physician.   Dr. Panis is a board certified in neurology and physical medicine and rehabilitation.

Dr. Panis is expected to testify and opine as to his examinations, testings, findings, diagnoses, prognoses, treatment, need for future treatment, medications of the Plaintiff and the causal relation between the accident and injury of June 15, 2014 and the conditions for which he treated the Plaintiff for.  Dr. Panis is expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations.   Dr. Panis will testify as to the Plaintiff's pre-accident and injury medical history.  Dr. Panis is expected to testify generally in accordance with all of the facts and opinions set forth in all of his medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

Dr. Panis will testify as to the various medical records that he reviewed and Plaintiff's prior medical history prior to treatment of the Plaintiff.  Dr. Panis will testify as to all testing performed on the Plaintiff and the results of the testing.

Dr. Panis is expected to testify as to the care and treatment of the Plaintiff from the time he initially saw him to the present. He will testify as to the various symptoms that he presented. Dr. Panis will testify that all treatment and diagnosis were all reasonable and medically

necessary and causally related to the Plaintiff's injury of June 15, 2014. Dr. Panis will also testify to the permanency of the Plaintiff's symptoms, conditions and diagnosis.

Dr. Panis will testify as to all his referrals of the Plaintiff to other Doctor(s), treatments and/or therapies and the outcomes of the referrals.

Dr. Panis will describe and explain the purpose of the medications that the Plaintiff was proscribed, the effects and purposes of the medications and Plaintiff's reactions to them. He will testify that all medications are causally related to Plaintiff's injury of June 15, 2014.

Testimony will be offered by Dr. Panis regarding future treatment and care of the Plaintiff.

Dr. Panis will testify that all treatment, diagnosis, procedures, testing, diagnostic procedures of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's injury of June 15, 2014.

Dr. Panis will testify as to the Plaintiff's limitations and its effects on the Plaintiff's ability to work and how it is causally related to incident and injuries of June 15, 2014.

Dr. Panis will also testify consistent of his report of January 17, 2017.

Dr. Panis's opinions will be based on his education, training and experience, as well as on their examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, all as set forth in the Plaintiff's medical records, which are in the possession of the Defendant.

Curriculum vitae will be provided.

5.    **Dr. Adrian J. Priesol**
      **Dr. David H. Jung & other treating physicians and practitioners listed in records**
      **Sarah Hourihan, pt**
      **Massachusetts Eye and Ear Infirmary**
      **243 Charles Street**
      **Boston, MA 02114**

Dr. Priesol is Plaintiff treating physician and is the Medical Director of the Auditory Evoked Response Testing and specializes in otology, neurotology, otoneurology, vestibular/balance disorders and is board certified in neurology.   Dr. Priesol is a licensed in Massachusetts.

Dr. Priesol is expected to testify and opine as to his examinations, testings, findings, diagnoses, prognoses, treatment, need for future treatment, medications of the Plaintiff and the causal relation between the Plaintiff's fall and injury of June 15, 2014 and the conditions for which he treated the Plaintiff for. Dr. Priesol is expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations. Dr. Priesol will testify as to the Plaintiff's pre-accident and injury medical history. Dr. Priesol is expected to testify generally in accordance with all of the facts and opinions set forth in all of his medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

With respect to the manner in which the Plaintiff's injury occurred, he is expected to testify that the Plaintiff fell on a fishing vessel and struck the right side of his head on the deck while working as a fisherman. Dr. Priesol will testify as to the Plaintiff's prior medical history prior to treatment of the Plaintiff.

Dr. Priesol will testify as to all testing performed on the Plaintiff and the results of the testing.

Dr. Priesol is expected to testify as to the care and treatment of the Plaintiff from the time he initially saw him to the present. He will testify as to the various symptoms that he presented of dizziness, vertigo, disequilibrium, rapid head movement to right triggers dizziness and laying down and rolling to right, tinnitus that is hissing that is not laterized, intermittent feeling of pressure in right ear, daily headaches since accident-right sided occipital pain that radiate to the

right frontal area, headaches that pulse, photophobia, weakness both legs to difficultly with memory and concentration.  Dr. Priesol will testify that the symptoms that Plaintiff presented with were all reasonable and medically necessary and causally related to the Plaintiff's fall and injury of June 15, 2014

Dr. Priesol will testify that he as to the findings of the Plaintiff's  audiogram and vestibular testing that shows 43% right caloric paresis; rotational testing shows VOR gain, increased VOR phase lead and shorting of the VOR time constant 6 seconds.  Further, Dr. Priesol is expected to testify that the audiograms showed low frequency conductive hearing loss ad and middle high frequency sensorineural hearing loss and tympanometry reveals significant negative right middle ear pressure. Dr. Priesol will testify as to the symptoms that the Plaitnff continued to present with dizziness, positional dizziness and visual vertigo, sensitive to visual flow stimuli, daily headaches and nausea. Dr. Priesol will testify that all symptoms were causally related to the Plaintiff's fall and injury of June 15, 2014.

Dr. Priesol is expected to testify that he diagnosed the Plaintiff with a closed head injury resulting in right peripheral vestibular loss, relapsing canalithiasis involving the right posterior canal and traumatic brain injury. Dr. Priesol will testify that all diagnosis were all reasonable and medically necessary and causally related to the Plaintiff's injury of June 15, 2014.

Based on the findings, Dr. Priesol is expected to testify that the recommended  vestibular rehabilitation for dizziness and abnormal gait and balance, vertigo, further treatment of the canalithiasis and compensation exercise 3-4 times a daily. Dr. Priesol is expected to testify how the Plaintiff did in physical therapy and the outcome.

Dr. Priesol will testify that all treatment and diagnosis were all reasonable and medically necessary and causally related to the Plaintiff's injury of June 15, 2014.  Dr. Priesol will describe and explain the purpose of the medications that the Plaintiff was proscribed, the effects and purposes of the medications and Plaintiff's reactions to them.  He will testify that all medications are causally related to Plaintiff's injury of June 15, 2014.Testimony will be offered by Dr. Priesol regarding future treatment and care of the Plaintiff.

Dr. Priesol will also testify to the permanency of the Plaintiff's symptoms, conditions and diagnosis.

Dr. Priesol will testify as to the Plaintiff's limitations and its effects on the Plaintiff's ability to work and how it is causally related to incident and injuries of June 15, 2014.

Dr. Priesol will testify that all treatment, diagnosis, procedures, testing, diagnostic procedures of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's injury of June 15, 2014.

Dr. Priesol's opinions will be based on his education, training and experience, as well as on their examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, all as set forth in the Plaintiff's medical records, which are in the possession of the Defendant.

Ms. Hourihan and other therapist listed in records are expected to testify as to the physical therapy that the Plaintiff underwent and Plaintiff's outcome.  They are expected to testify that therapy was reasonable and medically necessary and causally related to the Plaintiff's injury of June 15, 2014.

Curriculum vitas will be provided.

6.    **Dr. Neal McGrath**
      **Sports Concussion New England**
      **1368 Beacon Street, Suite 116**
      **Brookline, MA 02446**

13

Dr. McGrath is licensed neuropsychologist licensed in Massachusetts who specializes in sports concussions and is a treating physician of the Plaintiff.

Dr. McGrath is expected to testify and opine as to his examinations, testings, findings, diagnoses, prognoses, treatment, need for future treatment, medications of the Plaintiff and the causal relation between the accident and injury of June 15, 2014 and the conditions for which he treated the Plaintiff for. He is further expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations and that they are causally related to the Plaintiff's accident and injury of June 15, 2014. He is expected to testify generally in accordance with all of the facts and opinions set forth in all of his medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

Dr. McGrath will testify as to the treatment that Plaintiff received prior to be evaluated by him and that he was to perform a neuropsychological testing to assess current cognitive and emotional functioning and to assist in determining his status for recovery. Dr. McGrath will testify as to the various history that he took. He is expected to testify as to his mental status examination of the Plaintiff and his findings.

Dr. McGrath will also testify as to the various neuropsychological testing that he performed on the Plaintiff. He will describe the purpose of each test and the findings and results of the test for the Plaintiff. He will also testify as the findings and conclusion that he made as result of the testings. Dr. McGrath is expected to testify that his findings are causally related to the Plaintiff's accident and injury of June 15, 2014.

Dr. McGrath is expected to testify that Plaintiff suffered a concussion with loss of consciousness and suffers from post-concussion syndrome characterized by vestibular problems. Dr. McGrath is expected to testify that the Plaintiff's conditions are causally related to the

Plaintiff's accident and injury of June 15, 2014. He is expected to testify as to future treatment that is necessary for the Plaintiff.

Dr. McGrath will testify as to Plaintiff's permanency, limitations and ability to work. Dr. McGrath is expected to testify that Plaintiff's conditions and diagnosis are permanent and that the Plaintiff is unemployable and cannot work. He is further expected to testify as to his limitations. Dr. McGrath will also offer testimony as to the future treatment recommendations for the Plaintiff.

Dr. McGrath will testify consistent with his report which was previously provided to Defendant and that all conditions, diagnosis are causally related to Plaintiff injury and accident of June 15, 2014.   Dr. McGrath will offer testimony that all of the Plaintiff's impairments and disabilities from which he has suffered were causally related to his accident and injury of June 15, 2014.

Dr. McGrath will testify that all injuries, treatment, procedures, operations, testing, diagnostic procedures, rehabilitation and physical/occupational therapy of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's accident and injury of June 15, 2014.  Dr. McGrath will testify that the Plaintiff in the past, presently and in the future will suffer from continues symptoms and problems and limitation of function as a result of the accident and injury of June 15, 2014 and that the injuries and conditions sustained by the Plaintiff as a result of the accident and injury on June 15, 2014 are permanent. It is expected he will testify that the Plaintiff will be required to receive future medical care and treatment.

Dr. McGrath will also testify consistent with his report neuropsychological report which was previously provided to Defendant.

His opinions will be based on her education, training and experience, as well as on her

examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, all as set forth in the Plaintiff's medical records, which are in the possession of the Defendant.

Curriculum vitas will be provided.

7.      **Dr. Ivana Vodopivec**
        **Dr. Nagagopal Venna & other treating physicians and practitioners listed in records**
        **Massachusetts General Hospital**
        **15 Parkman Street**
        **Boston, MA 02114**

Dr. Vodopivec and Dr. Venna have been the Plaintiff's treating physicians, along with the other Doctor(s) and practitioners identified in the medical records, hereinafter referred to as "the Doctor(s).

The Doctor(s) are expected to testify and opine as to their examinations, testings, findings, diagnoses, prognoses, treatment, Plaintiff's symptoms and conditions, Plaintiff's physical and occupational therapy, need for future treatment, medications of the Plaintiff and the causal relation between the Plaintiff's fall and injury of June 15, 2014 and the conditions for which they treated the Plaintiff for. The Doctor(s) are further expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations. The Doctor(s) will testify as to the Plaintiff's pre-accident and injury medical history. It is expected that they will testify in accordance with all of the facts and opinions set forth in all of their medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

With respect to the manner in which the Plaintiff's injury occurred, the Doctor(s) are expected to testify that the Plaintiff slipped and fell on a fishing boat and struck his head on June 15, 2014. The Doctor(s) are expected to testify as to the Plaintiff's past medical treatment and tests that the Plaintiff prior to see them.

The Doctor(s) will testify as the symptoms that Plaintiff presented throughout their

treatment of the Plaintiff including but not limited to sharp right sided headaches, lighting rod through the eye, or forehead, facial flushing and sweating, dizziness, vertigo, tinnitus, lightheadedness, wooziness, numbness right sided of body with more in the face, right knee buckling since TBI, problems with attention and focusing, not follow things, loses track for conversation, gets foggy if turns head to the right to depression. The Doctor(s) will testify as to the Plaintiff's symptoms presented over the course of treatment of him are causally related to incident and injuries of June 15, 2014.

The Doctor(s) will testify as to the various neurological tests performed during Plaintiff's treatment and the findings of the test. The Doctor(s) are expected to testify that Plaintiff could not spell world backwards or do serial 7, unable to do verbal trail making test, very cautious in gait, unable to tandem and unable to march in place with eyes closed.

The Doctor(s) will testify that Plaintiff was diagnosed with multilevel spondylosis, central disc protrusion at C6-7 indenting the ventral cord, no cervical abnormalities; MRI 9-12-14 showed no evidence of stroke or hemorrhage and showed sulcal FLAIR hyperintensity in the bilateral occipital areas of unclear etilogoy, possibly artifactual; echo with bubble, per report EF 55%, no PFO; symptoms consistent with post-concussion syndromes, objective findings of abnormalities on recent vestibulogram are consistent with post-concussion vestibulopathy, to vertigo.  The Doctor(s) are expected to testify that Plaintiff had  prominent and persistent disabling symptoms due to inner ear damage, clear fluid out of right ear few days after trauma with the ear canal now dry, mild TBI, post-concussion syndrome to post concussion vestibulopathy.  The Doctor(s) will testify as to their recommendations and referrals they made for the Plaintiff.   Doctor(s) will testify as to the Plaintiff's diagnosis and referrals were causally related to incident and injuries of June 15, 2014.

The Doctor(s) will testify as to the various testings, procedures and MRI''s and Cat scans that the Plaintiff has undergone. They will also testify as to the various medications that they prescribed for the Plaintiff.

The Doctor(s) will testify as to the permanency of the the Plaintiff's diagnosis and conditions and how it is causally related to incident and injuries of June 15, 2014.

The Doctor(s) will testify as to the Plaintiff's limitations and its effects on the Plaintiff's ability to work and how it is causally related to incident and injuries of June 15, 2014.

The Doctor(s) will testify that all treatment, procedures, operations, testing, diagnostic procedures, diagnosis, rehabilitation and physical therapy of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's injury of June 15, 2014.

The Doctor(s) opinions will be based on their education, training and experience, as well as on their examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, all as set forth in the Plaintiff's medical records, which are in the possession of the Defendant.

Curriculum vitas will be provided.

8.   **Additional health care providers**

The Plaintiff may call any of his Doctor(s) and practitioners identified in his answers to Interrogatories and Interrogatory #9, #11, #12 and #19.

The Doctor(s) are expected to testify and opine as to their examinations, tests, conditions, findings, diagnoses, prognoses, treatment, need for future treatment, medications of the Plaintiff and how they are causally related to the Plaintiff's fall and injury of June 15, 2014. The Doctor(s) will testify as to the Plaintiff's pre-fall and injury medical history.   They are expected to testify generally in accordance with all of the facts and opinions set forth in all of their

medical records of the Plaintiff, which are incorporated by reference, and are all in the possession of the Defendant.

The Doctor(s) will testify as to the complete course of treatment and tests that the Plaintiff underwent and how it is causally related to accident and injuries of June 15, 2014. The Doctor(s) will testify as to their examination of the Plaintiff over the course of treatment and the symptoms Plaintiff presented to them over the course of treatment of the Plaintiff. The Doctor(s) are further expected to offer testimony as to the Plaintiff's disability, permanency of injuries and limitations and how it is causally related to accident and injuries of June 15, 2014. The Doctor(s) will testify that Plaintiff's diagnosis and conditions are permanent. The Doctor(s) will testify as to the past, present and future treatment that is necessary for the Plaintiff and how it is causally related to accident and injuries of June 2014.

The Doctor(s) will testify as to the Plaintiff's limitations and its effects on the Plaintiff's ability to work and how it is causally related to incident and injuries of June 15, 2014. The Doctor(s) will testify that the Plaintiff's symptoms, diagnosis, limitations and treatment were causally related to accident and injuries of June 15, 2014. The Doctor(s) will also testify to the permanency of the Plaintiff's symptoms, conditions and diagnosis.

The Doctor(s) will also, describe and explain the purpose of the medications that were proscribed during the course of the doctor(s) treatment of the Plaintiff and the medications are causally related to the incident and injury of June 15, 2014.

The Doctor(s) will testify that all symptoms, conditions, diagnosis, treatment, procedures, operations, testing, diagnostic procedures and physical therapy of the Plaintiff were all reasonable and medically necessary and causally related to the Plaintiff's incident and injury of June 15, 2014.

The Doctor(s) opinions will be based on their education, training and experience, as well as on their examination and treatment of the Plaintiff, and review of the Plaintiff's medical records, all as set forth in the Plaintiff's medical records, which are in the possession of the Defendant.

9.    **Dr. William Burke**
      **Noble Island No. 7**
      **500 Market Street**
      **Portsmouth, NH 03801**

Dr. William Burke will provide opinions and testimony consistent with his report which was provided to the Defendant and based on testimony and evidence introduced at trial.

For further information, see report provided.

10.   **Dana M. Hewins**
      **1 Tamett Brook Road**
      **Lakeville, MA 02347**

Dana Hewins will provide opinions and testimony consistent with his report which is provided to the Defendant and based on testimony and evidence introduced at trial.

For further information, see report provided.

11.   **Christopher D. Barry**
      **17 Pennsylvania Avenue**
      **Edgewater Beach, MD 20137**

Mr. Barry will provide opinions and testimony consistent with his report and based on testimony and evidence introduced at trial.

Mr. Barry will provide a report once he is able to inspect the vessel.

Respectfully submitted
by the Plaintiff, KEVIN BOTELHO

Carolyn M. Latti
BBO #567394
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000
clatti@lattianderson.com

Dated: 1-23-17

 MASSACHUSETTS
GENERAL HOSPITAL

 HARVARD
MEDICAL SCHOOL

Physical Medicine and Rehabilitation Department
5 Longfellow Place, Suite 201 | Boston, Massachusetts 02114

Phone: 617-643-2420 | Fax: 617-726-7875
Email: Wpanis@partners.org

Walter Panis, M.D.
Neurology

January 17, 2017

RE:  Kevin Botelho
DOB: May 12, 1963

Dear Sir/Madam:

I first met Kevin Botelho on February 19, 2015.  He was referred
to me by Sarah Hourhian, P.T.  The history I obtained was that
on Father's Day of the previous year he was working as a
commercial fisherman.  He slipped.  He twisted his head severely
to the right.  He is not sure at all what happened after that.
They were out on the boat for six more days.  He kept working.
He was dizzy and nauseated.  He felt terrible and had neck pain.
He developed facial pain on the right.  It began to feel like
frostbite.  Sometimes he felt like he had a mask on both sides.
He had confusion and fogginess.  He had difficulty speaking.  He
has had several episodes of getting worse.  He had been admitted
to the hospital a few times at St. Luke's Hospital.  He had
neurologic consultation.  He was diagnosed with "severe head
trauma and vertigo."  He was diagnosed with inner ear damage.
He had physical therapy in Dartmouth and had seen a concussion
expert previously.  He was seen by Otoneurology at Massachusetts
Eye and Ear and had vestibular testing that he was told was
abnormal.  He felt as if "his head and back do not work
together".  His gait can be off.  His confusion has worsened
over the last three weeks.  He has developed hypertension.  He
has been diagnosed with trigeminal neuralgia and occipital
neuralgia.  Ativan and Lopressor were used.  He gets episodes
where he "zones out".  His sleep is poor.  He got very sedated
on nortriptyline 40 mg.

The records he brought in revealed a normal MRI of the brain.
He had seen Gregory Whitman, M.D. of Neuro-otology.  He had a
concussion and positional vertigo.  He was treated with Epley

RE:  Kevin Botelho
Page 2

maneuvers. An MRI of the cervical spine had a bulging disc.  He
had a VNG that was reported to show 63% right-sided Caloric
paresis.  On Dix-Hallpike testing there were symptoms and signs
suggestive of a left posterior canal benign paroxysmal
positional vertigo.  Vestibular testing was again done.  It was
abnormal with rotational testing because of low amplitudes.
Other abnormalities were consistent with a peripheral vestibular
hypofunction.  He had seen Neurology previously.  A question of
posttraumatic migraine was noted.  Magnesium was prescribed.
In October 2014, he had been seen by Neurology at MGH.  It was
reported an EEG was negative.  He was unable to spell "world"
backwards.  He could not do serial 7s.  Nortriptyline was
started.  PT was needed. In December 2014, he was seen by Adrian
Priesol, M.D. of Otoneurology.  He was complaining of dizziness
with head movement, dizziness lying down and pressure in the
right ear.  He was to restart vestibular rehabilitation.  He is
a commercial fisherman.  He fishes approximately 140 days a
year.  He is out on the boat 10 to 11 days at a time.  When not
working on the boat he is an oil deliverer.  He has a past
history of "fatty liver".  On my initial examination blood
pressure is 170/100, pulse was 72 and regular.  He had a little
stutter.  He had difficulty remembering three words in 5
minutes.  He had poor repetition.  He was unable to name the
knot of a tie.  He complained of dizziness with vestibular
ocular testing.  He complained of decreased sensation on the
right side of his face with corneal reflexes being symmetric.
He had difficulty with tandem.  He had difficulty balancing on
either foot.  A trial of gabapentin as well as an MRI with DTI
was suggested.

An MRI of the brain was done on March 4, 2015 with DTI.  There
was asymmetric prominence with a left superior longitudinal
fasciculus although the other white matter tracts were normal
and symmetric.  He had a stable tiny focus of hemosiderin in the
left parietal lobe compatible with a cavernous malformation or
shear injury.  There was a tiny focus in the right frontal
subcortical white matter consistent with either migraines or

RE: Kevin Botelho
Page 3

microangiopathic disease. He had stable cerebellar tonsillar ectopia. It was felt that DTI may be related to handedness.

On March 19, 2015, he was seen again. His balance was improving but his cervical pain is variable. He was felt to have plateaued in PT. He continues to have variable symptoms. He has vertigo. He can "be disoriented". Speech therapy would continue.

On April 9, 2015, he is having the jolts that he gets in his head. He has been able to do more. However, his wife disagreed. As the day goes on his cognition worsens and he gets "foggy and confused". He was confused about his medication. He was on gabapentin 300 mg t.i.d. but it was no longer helping. His blood pressure was normal to very high per his primary care doctor. It was thought to be related to stress. His blood pressure was 120/70. I encouraged him to increase his activity. I suggested he return to the driving range. I referred him to Speech Therapy.

On April 14, 2015, he was seen by Paige Nalipinski of Speech Language Pathology. Please note he saw Ms. Nalipinski on June 11, 2015. He was felt to have deficits consistent with a mild traumatic brain injury and would be an excellent candidate.

On June 18, 2015, he was seen again. I have filled out FMLA papers for him. He felt worse. His headaches were bad. He zones out. The gabapentin would be tapered. Remeron would be started and he could increase it slowly. He is to be followed.

He is followed for Speech Language Pathology by Magdalen Ann Balz, at MGH.

On July 10, 2015, he was seen by David Jung, M.D., Ph.D., as he had had a left ear papilloma excised six months ago. He continued with imbalance related to his work injury.

RE:  Kevin Botelho
Page 4

On August 6, 2015, he was seen again.  I had wanted him to be
seen by Neuropsychology.  He has episodes where he "loses it".
He twitches and can't speak.  The gabapentin was finished and he
was on Remeron 45 mg.  There really wasn't much difference.  We
were going to taper the Remeron and a trial of Lyrica will be
attempted.

On September 4, 2015, a sleep study was reported.  He had
primary snoring with no periodic limb movements.  He had
findings consistent with chronic insomnia.

On October 29, 2015, he was seen for a GI Hepatology consult by
Michael Thiim, M.D. at MGH.  He met the criteria for metabolic
syndrome given his low HDL, hypertension, elevated fasting
plasma glucose.  He was felt to "likely has a hepatocellular
pattern of injury from MAFLD".  This seemed to represent some
degree of underlying insulin resistance.  Weight loss would be
helpful.  A FibroScan, abdominal ultrasound, bloodwork would be
done. His past history included carpal tunnel syndrome
bilaterally in 1983 and 1986 and having a rib removed as a child
at Children's Hospital.  A Mediterranean diet was recommended.
He is going to be seen again in two to three years.

On November 11, 2015, he is seen by David Caplan, M.D. in
consultation.  His mental status was abnormal.  He was felt to
have significant post-concussive symptoms associated with
vestibular disease and fifth cranial nerve irritation.  It was
felt his cognitive deficits were secondary to distraction due to
somatic symptoms.  Injections with either anesthetic or Botox
could be considered.  He should continue with Speech Language
Pathology.

On December 7, 2015, he was seen by Adrian Priesol, M.D.  He was
known to have right peripheral vestibular loss as well as
canalithiasis.  PT helped some of the symptoms.  He had a nerve
block and his headaches improved but they came back.  He had
persistent imbalance positional dizziness and "visual flow

RE:  Kevin Botelho
Page 5

sensitivity, i.e. visual vertigo". This was related to trauma.
He had very poor central compensation. Traumatic brain injury
was also likely contributing to his vestibular symptoms. He
should restart vestibular rehab.

He started physical therapy again with Cathy Joy, P.T. at MGH.

On February 17, 2016, he was complaining of nausea. He had
decreased sensation on the right side of his face. Compazine
was ordered for nausea. An MRA would be done because of the
trigeminal symptoms.

On March 31, 2016, he continued to be symptomatic. He had good
and bad days. The MRA showed no evidence of trigeminal nerve or
ganglion compression or an aberrant blood vessel. We increased
the gabapentin. He began using medical marijuana. It calms
down his nerve pain. He needs to use it frequently during the
day. He didn't feel as if he was getting "high" now. He was
continuing to see Cathy Joy, P.T. He was going to continue with
the treatment at before.

On April 11, 2016, he saw Dr. Priesol again. He continues to
have dizziness due to a combination of traumatic brain injury
and inner ear disease. Cognitive therapy would be considered.

On May 13, 2016, he saw Dr. Thiim. He did have fibrosis
diagnosed by scan.

On his last visit with Cathy Joy, P.T. on July 27, 2016, he
continued to have objective evidence of BPPT due to right
posterior canalithiasis and he tolerated repositioning with
mastoid vibration.

On August 3, 2016, he was seen again. We reviewed his
medications. He was switched from Compazine to Zofran. He
remained on Lisinopril and gabapentin.

RE:  Kevin Botelho
Page 6

On September 22nd and October 15, 2016, neuropsychological
evaluation was done by Neal McGrath, Ph.D.  I had referred him
to Dr. McGrath.  Full neuropsychological evaluation was
administered.  Dr. McGrath's summary and impressions included
the fact that he was functionally intellectually only in the
range of borderline impairment overall.  There was relative
preservation of his core nonverbal intellectual visuospatial
abilities, however, they are much more limited and currently at
a level significantly below his estimated baseline of
functioning.  There was also felt to be a marked decline on
measures of simple information processing efficiency.  Relative
strain was seen in arithmetic and some visuospatial tasks and in
parts of new learning.  He appeared to be hypersensitive to
certain types of visual stimulation interfering with his
capacity to participate in an interview, but also his ability to
tolerate the stimulation associated with certain tasks.  This
suggested that there were residual vestibular problems.  They
were felt to be a prominent barrier to his return to effective
functioning in everyday life.  Dr. McGrath felt it was difficult
to know to what extent his use of medical cannabis for pain
control may be compromising his neuropsychological test
performance.  He was felt to have a significant degree of
vestibular injury.  It was felt that he would not improve.
Further neuropsychological evaluation might be helpful.  It was
recommended he continue his medical care and consider another
round of vestibular therapy.  He did not appear close to
returning to competitive employment.  Antidepressant medication
might be helpful.  A cognitive therapist might help.  The Brain
Injury Associates of Massachusetts were recommended.  He should
apply for SSDI.  He should be retested again in a year.

On December 20, 2016, William H. Burke, Ph.D. prepared a
Rehabilitation and Lifecare Plan for Kevin Botelho.  I had a
chance to review that.  The conclusions were that he continued
to have physical and cognitive disabilities and needed ongoing
medical care and interventions.  Recommendations included
additional therapeutic intervention including a further course

RE:  Kevin Botelho
Page 7


of vestibular physical therapy.  A cognitive therapy evaluation should be done.  Two options were presented for support services.  As his wife is available, he is provided with a case manager and community living coordinator along with a community and living coach and daily activity coordinator.  He would also require household production assistance and assistance with transportation.  A second option assumed that his wife was no longer available and he would then need a live-in personal care attendant and homemaker.  He would also benefit from a day activity program and ongoing household assistance.  In addition, assistive technology to compensate for his cognitive abilities was recommended.

Based upon history, test results and consultations, I believe he continues to have and will have the symptoms of mild traumatic brain injury and the vestibular abnormalities.  To a reasonable degree of medical certainty this is related to the work-related injury that occurred in June of 2014.


I believe he is totally disabled due to the work-related injury.


If there are any further questions please contact me.

I certify that I am a licensed physician in the Commonwealth of Massachusetts and have reached the above conclusion to a reasonable degree of medical certainty.


Walter Panis, M.D.

Diplomate of the American Board of Neurology and Psychiatry
Diplomate of the American Board of Physical Medicine and Rehabilitation